## Casper L. Redfield, Appellee, v. Lorimer-Lundquist Company et al., Defendants.
### On appeal of James D. Lynch, Appellant.

### Gen. No. 18,682.

1. INJUNCTION—*when proper to temporarily restrain prosecution of suit.* A stockholder of a corporation transferring its patent rights to another corporation in exchange for a portion of its stock received the stock as trustee. The purchasing corporation sold the patent rights and declared a dividend, but payment on the dividend check to the trustee was refused owing to the absence of an official signature claimed to have been omitted by collusion in order that a claim of an alleged stockholder of the original corporation might be enforced. Such stockholder filed a bill in equity to determine his rights, the purchasing corporation filed a bill of interpleader and the trustee instituted an action at law against such corporation for the amount of the dividend check. *Held*, it was proper at the instance of the claimant stockholder to issue a temporary injunction restraining the trustee from prosecuting his action at law.

2. INJUNCTION—*when bond should be required.* An alleged stockholder of a corporation transferring its patent rights to another corporation in exchange for a portion of its stock, which was received by a stockholder of the selling company as trustee, filed a bill to determine his rights in a dividend of the purchasing company owing to the trustee. The purchasing corporation filed a bill of interpleader and the trustee instituted an action at law against such corporation for the amount of the dividend. A large sum was involved, the chancery proceedings were complicated, and if the claimant was defeated the trustee would be damaged by loss of interest and otherwise. *Held*, it was a wrongful exercise of discretion to temporarily restrain the prosecution of the action at law at the instance of the claimant without requiring a bond to be filed.

3. APPEALS AND ERRORS—*when order is interlocutory and appealable.* An injunctional order reciting that, a cause having been heard upon the pleadings, a certain person be restrained from further prosecuting an action until further order of the court, is such an interlocutory order as is appealable under R. S., c. 110, § 123. *Certiorari* denied by Supreme Court (making opinion final).

McSURELY, J., dissenting.

Appeal from the Superior Court of Cook county; the HON. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Reversed and remanded with directions. Opinion filed November 29, 1912. Rehearing denied December 12, 1912, and opinion modified and refiled.

NEWMAN, LEVINSON, BECKER & CLEVELAND, for appellant; JACOB NEWMAN, HIRAM T. GILBERT, W. P. THOMPSON and CHESTER E. CLEVELAND, of counsel.

CHYTRAUS, HEALY & FROST, CARL V. WISNER, EDWIN WHITE MOORE and BARTON & FOLK, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This is the appeal of James D. Lynch, by virtue of section 123 of chapter 110 of the Revised Statutes of Illinois, from an interlocutory injunctional order of the Superior Court of Cook County, restraining him from prosecuting an action at law, brought by him as trustee, in the Municipal Court of Chicago against the Lorimer-Lundquist Company. The injunctional order was issued without bond, May 28, 1912, and is as follows:

"This cause coming on this day upon the reading of the petition of Casper L. Redfield, praying for an order restraining James D. Lynch from prosecuting a certain suit at law, instituted by him in the Municipal Court of Chicago, or from taking any step or proceeding therein until the further order of this court, and upon the reading of the original bill of complaint, the cross-bill of complaint of John J. Brownrigg, the cross-bill of complaint of the Lorimer-Lundquist Company, and all answers of James D. Lynch, Frank A. Lundquist, A. L. Craig, John E. Norling, the Globe Automatic Telephone Company of New Jersey, and the Globe Automatic Telephone Company of Illinois, to the said original bill and said two cross-bills, and to the said petition of the said Redfield, and the court having heard arguments of counsel and being fully advised in the premises, IT IS ORDERED that the said James D. Lynch, his attorneys, solicitors, agents and representatives, be restrained, and that he refrain from further prosecuting the said action at law now pending in the Municipal Court of Chicago, entitled James D. Lynch, trustee, vs. Lorimer-Lundquist Company, a cor-

poration, No. 205676 upon the docket of said Municipal Court, until the further order of this court.''

It appears from the certificate of evidence, signed and sealed by the chancellor, that Redfield's bill, his petition for an injunction, and the cross-bills of Brownrigg and of the Lorimer-Lundquist Company were sworn to; that the various answers of the defendants, mentioned in said injunctional order, to said bill and cross-bills were also sworn to, including the answer of Lynch to said petition of Redfield, with the exception of the answer of the Globe Automatic Telephone Company of Illinois to Redfield's bill; and that all of said pleadings, together with a certain amendment to the cross-bill of the Lorimer-Lundquist Company and the disclaimer of John K. Norstrom ''were all the matters read to or considered by the court and all the evidence introduced on the hearing of the motion for an injunction.''

The *praecipe* transcript of the record is very voluminous. There is an additional *praecipe* transcript consisting of the answer of the Continental & Commercial National Bank to Redfield's bill, the formal replications of Redfield to the answers of Lynch, Lorimer-Lundquist Company, Craig, Norling and Lundquist to Redfield's bill, and the answer of Brownrigg to the petition of one Walter H. Lee. Brownrigg's answer to said petition is not sworn to and the petition of Lee is not in said transcript.

The appellant, Lynch, assigns as error that (1), the court erred in entering the interlocutory decree appealed from, and (2), the court erred in entering said order ''without requiring from Casper L. Redfield any bond or security.'' The same errors are assigned by Frank A. Lundquist. It is contended by counsel for Redfield that the order appealed from is not such an interlocutory order as is appealable under said section 123 of chapter 110, and that, therefore, the appeal should be dismissed. After careful consideration we are of the opinion that the order appealed from is

within the purview of the statute and that the appeal is properly before us.

Some of the prominent facts of this case, as disclosed from the sworn pleadings, are: The Globe Automatic Telephone Company, of New Jersey (hereinafter called the Globe Co.) had dealings with the Lorimer-Lundquist Company (hereinafter called the Lorimer Co.), the result of which was that the Globe Co. transferred the major part of its assets, consisting of patent rights, to the Lorimer Co. in exchange for one-half of the issued stock of the Lorimer Co. The portion of stock to which the persons interested in the Globe Co. became entitled was put in the name of James D. Lynch, as trustee. Redfield claims a certain interest (more than one-fifth) in said stock so in the hands of Lynch. Lynch, Norling, Lundquist and Craig deny he has any interest. About May 20, 1911, the Lorimer Co. made an agreement with the Western Electric Company (hereinafter called the Electric Co.) by which it gave to the latter company an option to purchase the United States patent rights of the Lorimer Co. for $650,000. This option was consummated on September 2, 1911, and on that date the Electric Co. paid the Lorimer Co. the sum of $424,850, in cash, which was deposited in said Continental & Commercial National Bank to the credit of the Lorimer Co., and further agreed to pay the Lorimer Co. the sum of $125,000 on or about December 11, 1912, and $100,000 on or about December 11, 1913, provided certain terms and conditions were carried out by the Lorimer Co., the said $225,000 being retained by the Electric Co. as security for the performance of the undertakings of the Lorimer Co. Prior to the payment of this large sum of money to the Lorimer Co., certain dissensions existing among the stockholders of the Lorimer Co. were settled, and Harrison B. Riley, president of the Chicago Title & Trust Co. was selected as one of the seven directors and as treasurer of the company, and, as the holder in trust of 2,000 shares of the 11,000

shares of issued stock, held the balance of the power between the contending factions. The other directors of the company were E. A. Shedd, N. D. Neill, and C. B. Shedd, representing the so-called "Lorimer" interests, and James D. Lynch, A. L. Craig and J. E. Norling, representing the so-called "Globe" interests. James D. Lynch was president, E. A. Shedd, vice-president, and E. J. Shedd, secretary. Three days after said sum of $424,850 had been paid to the Lorimer Co., viz.: on December 5, 1911, all of the seven directors met at the company's office in the Monadnock building, Chicago, and a dividend of thirty per cent. on the 11,000 issued shares was declared. It was required that checks be signed by Lynch as president and E. J. Shedd as secretary, and that they be counter-signed by Riley as treasurer. At the meeting several checks were drawn to pay certain debts of the company, and then the dividend checks were drawn, all bearing the required signatures, except one check amounting to $134,940, payable to Lynch as trustee, and being for the said dividend on 4498 shares of stock held by said Lynch as trustee. This check was signed by Lynch, as president, and also by Riley, but it was not signed by E. J. Shedd, as secretary, and this omission was, it is said, overlooked by Lynch and Riley at the time. It is alleged in Lynch's sworn answer to Redfield's bill that said check

"was purposely and intentionally not signed by E. J. Shedd, pursuant to a collusive and fraudulent conspiracy, * * * so that this defendant would not be able to collect said check, and in that way, E. J. Shedd, A. C. Wisner and Casper L. Redfield hoped to enable Redfield to hold up payment of said $134,940 and thereby force this defendant to pay Redfield his unconscionable, dishonest and corrupt demand, set forth in his bill of complaint; that said check was, by this defendant, presented to the Continental & Commercial National Bank of Chicago for payment, and the same was refused because it did not bear the signature of the secretary; that E. J. Shedd, Casper L. Redfield and

A. C. Wisner admit that they were parties to said conspiracy, and knew that E. J. Shedd had not signed, and would not sign, the check, and that it was understood between them and Casper L. Redfield, that E. J. Shedd should pretend to sign, but in fact should not sign the check.''

It is further alleged in the answer of Lynch that, prior to the time the Globe Co. transferred its assets to the Lorimer Co. and virtually became consolidated with it, he advanced from time to time to the Globe Co. the total sum of $55,788.53, on which interest amounting to nearly $10,000 has accrued; that Craig also loaned moneys to the Globe Co., as did Norling; that shortly prior to said sale to the Electric Co. it became necessary, in order to consummate said transfer, to obtain a certain release from Frank A. Lundquist, which he finally executed on condition that he should be paid the sum of $25,000 out of the first moneys received from said sale by Lynch, as trustee; that in equity and good conscience this $25,000 due to Lundquist, together with the moneys advanced by Lynch, Craig and Norling, together with interest thereon, should be first paid out of this dividend check of $134,940 before Redfield should receive anything therefrom, even though the latter should be able to establish ''the fraudulent claims or some of them set forth in his original bill.''

Shortly after said meeting of December 5, 1911, Lynch presented said dividend check, payable to himself as trustee, to the bank for payment, but payment was refused because the check did not bear the signature of said secretary.

On December 11, 1911, Redfield filed his sworn bill, setting forth his interest in the stock so held by Lynch as trustee and his right to certain moneys out of said dividend check, and alleging that Lynch was conspiring with Craig, Norling, Lundquist, Riley and others to deprive him and other stockholders of said Globe Co. of their rights, and that Lynch held said stock both

upon an express and upon an implied, resulting or constructive trust in his favor. The bill prayed that the court determine what moneys should be paid Redfield out of said check and what portion of said stock belonged to him, which when ascertained should be transferred to him; that Lynch be enjoined from receiving and the Lorimer Co. from paying to Lynch any dividend wherein Redfield had an interest; that the · Lorimer Co. account to Redfield; that the bank be enjoined from paying to anyone other than Redfield any moneys of the Lorimer Co., wherein Redfield is interested; that Redfield's interest in the foreign patents and other assets of the Lorimer Co. be ascertained, and that the Electric Co. discover the terms upon which the $225,000 to be paid the Lorimer Co. is held.

On January 29, 1912, John J. Brownrigg filed a cross-bill by the same solicitors as represented Redfield. He adopted the allegations of Redfield's bill, and alleged that he owned 141 shares of stock of the Globe Co., and that he disapproved and disaffirmed the sale by the Lorimer Co. to the Electric Co. He prayed that the consolidation of the Globe Co. with the Lorimer Co. be declared void as a fraud on his rights and be set aside, that the sale to the Electric Co. be set aside, that his rights be protected, and that the bank and the Electric Co. be enjoined from paying out any of the moneys in their possession.

On February 5, 1912, the Lorimer Co. filed a cross-bill. Lynch was still the president of the company but the cross-bill was sworn to by H. J. Tansley, who said he was then the secretary. It was alleged that the Lorimer Co. had no interest in the controversy between Redfield, Lynch and others; that it has in its possession money for distribution which it is ready and willing to pay to the persons entitled to it; and that as to the fund represented by said unpaid dividend check of $134,940 it cannot safely pay any portion thereof to Lynch except at the peril of being obliged to pay the same again to some claimant now a

party to the litigation. The prayer was that Redfield and the other defendants, including Lynch, may be compelled to interplead and determine the ownership of said fund, that the Lorimer Co. may be permitted to pay into court the said sum of $134,940 in full satisfaction of its obligations to distribute the same to the persons entitled thereto, that Redfield, Lynch and others claiming said fund may be restrained from bringing suit against the Lorimer Co. after said payment into court, and that E. J. Shedd, or any other secretary of the company, be restrained from affixing his signature to said check. Lynch in his sworn answer to this cross-bill alleged that the same was filed in the interest of Redfield and to carry out Redfield's scheme to prevent Lynch from obtaining the money on said check, without Redfield's being compelled to give any proper bond to answer in damages for tying up said money. The said $134,940 was not paid into court.

Neither Redfield nor said cross-complainants seemingly made any application to obtain temporary injunctions as respectively prayed for until Redfield filed his petition hereinafter mentioned. After Lynch had filed his sworn answer to the cross-bill of the Lorimer Co., and on the day before he filed his separate sworn answers to the bill of Redfield and the cross-bill of Brownrigg, Lynch, as trustee, commenced a suit in the Municipal Court of Chicago, March 6, 1912, against the Lorimer Co. to recover the amount of said dividend check, together with interest thereon from December 5, 1911.

On March 15, 1912, Redfield filed a sworn petition in this cause praying for an order restraining Lynch from prosecuting said Municipal Court suit until the further order of the court. He alleged that "the cause of action set up by Lynch in said suit at law is based upon the same facts and has relation to the same fund and is based upon the same claim as is set up in petitioner's bill of complaint; that the purpose

of said suit is to withdraw from this court and transfer to the Municipal Court the jurisdiction of said claim and the right to determine the same issues as are set forth in petitioner's bill and the answers, cross-bills, etc., thereto, and is in derogation of the right, dignity and jurisdiction of this court, and said parties in so doing are in contempt thereof.'' On March 18, 1912, Lynch filed his sworn answer to this petition in which he denied that any interest in the fund was claimed by any parties adversely to him, except by Redfield and Brownrigg, and alleged that Brownrigg, on March 15, 1912, in consideration of $1,500 to him paid, assigned to Walter H. Lee all his right and interest in and to every matter involved in this cause and that Lee was endeavoring to have the cross-bill of Brownrigg dismissed. He admitted the bringing of said suit at law, denied that that suit was based upon the same facts or the same claim as was set forth in Redfield's bill, alleged that the only issue involved in said suit at law was the indebtedness of the Lorimer Co. to Lynch as trustee, which indebtedness was not disputed by Redfield, and that Lynch was solvent and amply responsible financially to respond to any judgment or decree which might be obtained against him by Redfield, and denied that because of the prosecution of said suit at law he was in contempt of court. The facts alleged in Lynch's answers to the bill of Redfield and the cross-bills of the Lorimer Co. and Brownrigg were made a part of his answer to said petition. In one of said answers Lynch tendered to Redfield a bond, with such sureties as the court might name, to indemnify Redfield from any loss that might arise to him, should the Lorimer Co. pay said sum of $134,940 to Lynch. After a protracted hearing on said petition for an injunction, the chancellor granted the injunction, from which this appeal is taken.

After careful consideration of the record before us we have reached the conclusion that the chancellor would have been justified in granting an injunctional

order, under proper bond, restraining Lynch from prosecuting said suit at law until the further order of the court. By virtue of the filing of said bill, cross-bills, and the several answers thereto, the Superior Court, as a court of equity, had first obtained jurisdiction of the subject matters involved. It was proper for the court to retain that jurisdiction, in order to render full and complete equity to all the parties concerned, and to that end prevent any part of the litigation from being removed to another tribunal. But we are of the opinion that the court, in view of all the facts disclosed from the sworn pleadings, erred in granting said injunctional order without bond. Section 9 of chapter 69 of the Illinois Statutes requires an injunction bond except where, "for good cause shown," the court be of the opinion that the injunction ought to be granted without bond. We think that the chancellor's discretion in granting the injunctional order in this case without bond is a proper subject for review by this court. By the order Lynch, as trustee, is prevented from collecting, by the usual legal procedure, a large sum of money from the Lorimer Co., apparently until a complicated chancery litigation is concluded. He is so prevented at the instance of a party who claims but a fractional portion of said sum, and who, at the conclusion of said litigation, may or may not be decreed to be entitled to that portion. In the meantime, if Lynch should establish his contention that Redfield is entitled to no part of said sum, the rightful owners of the same will suffer considerable damage in loss of interest and otherwise. The interest on said sum at the legal rate amounts to more then $6,700 per year, and it is charged that Redfield is financially irresponsible. Because of the possible failure of Redfield after a full hearing on the merits satisfactorily to establish his claim to a portion of the fund, and a portion of the stock so held by Lynch as trustee, it seems to us equitable that provision be made for the payment of all damages resulting to the own-

ers of said fund occasioned by the wrongful tying up of the money *pendente lite.* For the reasons indicated, the order of the Superior Court will be reversed and the cause remanded with directions to enter an inter- locutory injunctional order as prayed in the petition of Casper L. Redfield upon his filing an injunction bond in the usual form, in the penal sum of $25,000, conditioned for the payment to said James D. Lynch, trustee, of all costs and damages occasioned by the wrongful suing out of said injunctional order in case the same shall hereafter be held to have been wrong- fully sued out and be dissolved. Each party to pay his own costs in this court.

*Reversed and remanded with directions.*

MR. JUSTICE McSURELY dissenting:—In my opinion the discretion vested in the chancellor was properly exercised in granting the injunction without bond.